```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
SOKOL HOLDINGS, INC., BRIAN SAVAGE,   |
and THOMAS SINCLAIR,                  |
                                      |
                Plaintiffs,           |
                                      |     05 Civ. 3749 (KMW)
     -against-                        |     OPINION AND ORDER
                                      |
BMB MUNAI, INC., ALEXANDRE AGAIAN,    |
BAKHYTBEK BAISEITOV, GEORGES          |
BENARROCH, BORIS CHERDABAYEV,         |
MIRGALI KUNAYEV, CREDIFINANCE         |
CAPITAL, INC., and CREDIFINANCE       |
SECURITIES, LTD.,                     |
                                      |
                Defendants.           |
--------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

Plaintiffs Sokol Holdings, Inc. ("Sokol"), Brian Savage ("Savage"), and Thomas Sinclair ("Sinclair") bring this diversity action against BMB Munai, Inc. ("BMB"), Alexandre Agaian ("Agaian"), Bakhytbek Baiseitov ("Baiseitov"), Georges Benarroch ("Benarroch"), Boris Cherdabayev ("Cherdabayev"), Mirgali Kunayev ("Kunayev"), Credifinance Capital, Inc. ("CCI") and Credifinance Securities, Ltd. ("CSL") (collectively, "Defendants"), alleging: (1) tortious interference with contract; (2) breach of contract; (3) unjust enrichment; (4) breach of fiduciary duty; (5) unfair competition; (6) tortious interference with fiduciary duty; and (7) aiding and abetting breach of fiduciary duty. Plaintiffs seek compensatory and punitive damages, and specific performance. Defendants move to dismiss Plaintiffs' Second Amended Complaint or stay the case pending arbitration, which Defendants contend

1

must take place in Kazakhstan.  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.   Background**

The Court assumes the following facts, drawn from Plaintiffs' Second Amended Complaint, to be true for the purposes of this motion to dismiss.  See Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999); cert. denied, 528 U.S. 1188 (2000).

In March 2003, Savage, a resident of Colorado, and Sinclair, a citizen of New Zealand, formed and incorporated Sokol for the purpose of exploring and developing oil and gas fields in the Republic of Kazakhstan.  In forming Sokol, Savage and Sinclair developed a business plan by which Sokol would purchase and develop Kazakhstan's Aksaz-Dolinnaya-Emir oil and gas fields (the "ADE fields").  In February 2003, they discussed with Defendants Benarroch and Agaian their business plan for Sokol.

On April 26, 2003, Sokol entered a contract (the "Emir Contract") with Toleush Tolmakov Kalmukanovitch ("Tolmakov") for the purchase of 70% of Tolmakov's 90% interest in Emir Oil LLP ("Emir").  Defendants Cherdabayev, Kunayev, and Baiseitov agreed to contribute $500,000 each toward that purchase on Sokol's behalf.  On March 17, 2003, ANBI -- Agaian's company -- executed a letter of intent (the "Letter of Intent") with Emir on Sokol's

2

behalf for the purchase of 70% of Emir.  In May 2003, however, Tolmakov sold 70% of his 90% interest in Emir to BMB.  Plaintiffs allege that Defendants formed BMB to misappropriate Sokol's business plan, which culminated in Tolmakov's sale to BMB.

## II.  Analysis[1]

Defendants argue that: (1) the Court lacks personal jurisdiction over six of the eight Defendants in this case; (2) the case should be dismissed in favor of Kazakhstan under the doctrine of forum non conveniens; (3) if any New York court is to hear this case, it should be a New York state court; (4) the case should be stayed pending arbitration in Kazakhstan; (5) Counts I and II should be dismissed because Tolmakov is an indispensable party; and (6) Counts VII, VIII, and IX fail to state a claim. The Court addresses each argument in turn.

### A.   Threshold Matters

#### 1.   Personal Jurisdiction

Defendants Baiseitov, Benarroch, Cherdabayev, Kunayev, CCI and CSL (collectively, the "Objecting Defendants") argue that this Court lacks personal jurisdiction over them.  The Court disagrees.

---

[1] The parties have properly invoked this Court's subject matter jurisdiction, as there is complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

Under Federal Rule of Civil Procedure 12(b)(2), Plaintiffs bear the burden of making a prima facie showing of personal jurisdiction over each defendant.  In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)).  Because the Court's subject matter jurisdiction rests upon diversity of citizenship, the Court must apply New York law to determine whether it has personal jurisdiction. DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).  New York's long-arm statute provides jurisdiction over, inter alia, Defendants who "transact[] any business within the state" and whose claims arise from those business transactions, as well as over Defendants who commit tortious acts other than defamation within the state.  N.Y. C.P.L.R. § 302(a)(1)-(2).

Here, Plaintiffs allege that each Defendant conducted business in New York, either by traveling to New York to attend meetings related to their own interests and the Sokol plan, and via Agaian, who acted as their agent.[2]  Decl. of Thomas Sinclair

---

[2] Defendants argue that the Court may not consider the Declaration of Thomas Sinclair in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss or Stay (the "Sinclair Declaration"), because the Sinclair Declaration is not based upon personal, firsthand knowledge.  The Sinclair Declaration, however, clearly states that it is based upon the declarant's personal knowledge.  Sinclair Decl. ¶ 2, attached as Ex. C to the Decl. of Tamara L. Bock in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss or Stay ("I have personal knowledge of the following facts.").

4

in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss or Stay ¶¶ 2(b)-(c)(iii), attached as Ex. C to the Decl. of Tamara L. Bock in Support of Pls.' Opposition to Defs.' Motion to Dismiss or Stay [hereinafter the "Sinclair Decl."].³  These allegations are sufficient to establish that Defendants transacted business related to Sokol in New York.  E.g., United Feature Syndicate v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 205-06 (S.D.N.Y. 2002).  Because Plaintiffs' theory is that Defendants tortiously interfered with the Emir Contract and usurped Sokol's business plan, Plaintiffs' showing establishes that Defendants' business activities in New York were sufficiently related to the cause of action.⁴  These activities also establish sufficient minimum contacts with New York so that the exercise of personal

---

³ Specifically, the Sinclair Declaration states that: (1) Agaian and ANBI were agents in New York City for Baiseitov and that Baiseitov visited New York regularly to monitor his business interests; (2) Benarroch, Cherdabayev, Kunayev, and Baiseitov were in "regular contact" with Agaian in New York about "the conception and development of Sokol and their subsequent usurpation of that opportunity"; (3) Benarroch and Baiseitov met in New York City concerning what Sinclair believed was the Sokol deal; (4) Benarroch and "several of his associates from Credifinance" attended a meeting in New York City (the "Benarroch Meeting"), during which the interested parties signed the Letter of Intent; and (5) that it was Sinclair's "understanding and recollection that the princip[al]s of BMB, including Cherdabayev, Kunayev, and Baiseitov, attended the [Benarroch Meeting]." Sinclair Decl. ¶¶ 2(b)-(c)(iii).

⁴ Because Plaintiffs have met their prima facie burden under N.Y. C.P.L.R. § 302(a)(1), the Court need not consider whether Plaintiffs have established an independent basis of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(2).

jurisdiction does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted).  Plaintiffs have therefore made a prima facie showing of personal jurisdiction over each of the Objecting Defendants.[5]

## 2. Forum Non Conveniens

Defendants argue that because Kazakhstan is an adequate and far more convenient forum than New York, the Court should dismiss the case under the doctrine of forum non conveniens.  This argument fails.

In deciding whether to dismiss on forum non conveniens grounds, courts in this Circuit undertake a three-step analysis. Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001). First, courts determine the degree of deference due to the plaintiff's choice of forum.  Next, courts examine whether an adequate alternative forum may hear the dispute.  Finally, courts weigh the competing private interests of the parties in the choice of forum, and the public interests of the alternative fora under consideration.  Id.  The action should be dismissed "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."  Id. at 74-75.

---

[5] Defendants argue that CCI and CSL must be dismissed because Plaintiffs do not distinguish between the entities.  No distinction is necessary, in light of the fact that Plaintiffs' Second Amended Complaint defines "Credifinance" to include both CCI and CSL.  Pls.' Second Am. Compl. ¶ 24.

6

Applying the test set forth in <u>Iragorri</u>, the Court begins with a strong presumption in favor of Plaintiffs' choice of forum.  Here, that presumption remains strong because two of the three Plaintiffs (Sinclair and Sokol) are U.S. citizens and there is no evidence of forum shopping.[6]  <u>Henderson</u>, 470 F. Supp. 2d at 302.  The Court thus defers to Plaintiffs' choice of forum.

Secondly, the Court considers whether an adequate alternative forum exists.  The record, at this stage, leaves uncertain whether an adequate alternative forum exists in Kazakhstan.  Plaintiffs argue that Kazakhstan's law does not recognize tortious inference and would not permit Plaintiffs to recover, and that courts in Kazakhstan are corrupt.  Although Defendants have submitted two declarations from an attorney in Kazakhstan stating that a Kazakh tribunal would likely treat tortious interference claims as contract claims and would be guided by principles similar to U.S. tort law, these declarations do not establish that Kazakhstan's law would permit Plaintiffs to recover, and Plaintiffs have responded with a detailed declaration stating that the law of Kazakhstan has "no really close approximation" of tortious interference.  Decl. of Iskander

---

[6] Defendants argue that Plaintiffs' failure to join Tolmakov indicates that Plaintiffs have sued in New York to gain a tactical advantage.  This lawsuit, however, concerns Defendants' actions, which are distinct from Tolmakov's actions.  The fact that Plaintiffs may have different claims against Tolmakov does not necessarily suggest forum shopping.

Urazovich Zhanaidarov ¶¶ 3-6, attached as Ex. 5 to Defs.' Notice of Mot.; Reply Decl. of Iskander Urazovich Zhanaidarov ¶¶ 4-6, attached as Ex. 3 to Reply Decl. of Kenneth A. Caruso in Supp. of Mot. to Dismiss or Stay.  Decl. of Scott Horton ¶ 10, attached as Ex. A to the Decl. of Tamara L. Bock in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss or Stay.  Plaintiffs, however, have not provided sufficient evidence to support their repeated assertions that Kazakh courts are corrupt and therefore incapable of delivering a just verdict.  Henderson v. Metro. Bank & Trust, 470 F. Supp. 2d 294, 307 (S.D.N.Y. 2006) (noting that Plaintiffs bear the burden of showing, plainly and by specific evidence, that courts in the alternative forum are "highly unlikely" to provide Plaintiffs with "basic justice"); see id. (citing Leon v. Million Air, Inc., 251 F.3d 1305, 1311-12 (11th Cir. 2001)).  Thus, the Court concludes that the second prong of Iragorri favors neither forum.

    Finally, the balancing of public and private interests favors New York as a forum.  Defendants argue that a public-interests balancing favors Kazakhstan because New York has little interest in this dispute while Kazakhstan has a strong interest, and trial in Kazakhstan would avoid conflicts of law problems. New York, however, has a strong interest in monitoring business

transactions taking place within the state.[7]  While most Defendants are not U.S. citizens, Plaintiffs have made a sufficient showing that Defendants travel to and conduct business in New York, and that many relevant documents and witnesses are here.

Thus, the burden of litigating in New York -- while not inconsiderable -- does not outweigh Plaintiffs' choice of forum. Defendants' motion to dismiss the case on <u>forum non conveniens</u> grounds is denied.

### 3.   **New York State Court**

Defendants argue that if the Court denies their motion to dismiss the case under <u>forum non conveniens</u>, then it must dismiss the case, because a forum selection clause in the Letter of Intent states that all disputes arising from the Letter of Intent must be litigated in New York state court.  The forum selection clause in the Letter of Intent has no bearing on the instant dispute, however, because the dispute in this case arises from Defendants' alleged interference with the Emir Contract, which supplanted the Letter of Intent.

---

[7] Defendants argue that the tortious conduct necessarily occurred in Kazakhstan and that Kazakh law will govern. Plaintiffs' Second Amended Complaint, which controls on a motion to dismiss, however, alleges that Defendants met in and communicated with others in New York to plan the alleged wrongful acts and used New York resources to implement their plan.  Pls.' Second Am. Compl. ¶ 26-60.  Thus, Defendants' argument that the law of Kazakhstan will apply is by no means a foregone conclusion.

9

### 4. Stay Pending Arbitration

Defendants argue is that this Court must stay the present case pending arbitration in Kazakhstan, because Plaintiff Sokol agreed to arbitration in the Emir Contract.  Specifically, Defendants argue that the Emir Contract estops Sokol from refusing to arbitrate Counts I and II, and requires all Plaintiffs to arbitrate the other claims.  The Court disagrees.

Because Defendants are not parties to the Emir Contract, they may compel Sokol and the nonsignatory plaintiffs to arbitrate only under an estoppel theory.  Under principles of estoppel, a nonsignatory to an arbitration agreement may compel a signatory to arbitrate where: (1) "there is a close relationship between the parties and controversies involved"; and (2) "the signatory's claims against the nonsignatory are 'intimately founded upon and intertwined with the underlying' agreement containing the arbitration clause."  Denney & Jenkins v. Gilchrist, 412 F. Supp. 2d 293, 297 (S.D.N.Y. 2005) (quoting JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004)).  This inquiry is fact-specific; claims are intertwined "where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause."  Denney, 412 F. Supp. 2d at 298 (citing JLM Indus., Inc., 387 F.3d at 178) (alteration in original).

Here, Defendants can show neither the requisite relationship among the parties nor that Plaintiffs' claims arise from the Emir Contract. Defendants' only argument that the parties are closely related is that Plaintiffs treat BMB as though it had signed the Emir Contract. In support of this argument, Defendants contend that, because Plaintiffs seek specific performance through BMB, not Tolmakov, Plaintiffs treat BMB as though it had signed the Emir Contract. BMB, however, has succeeded Tolmakov's interest in Emir; because BMB owns the ADE oil fields, only BMB can perform the Emir Contract at this time. Plaintiffs must therefore seek specific performance through BMB. No other facts support Defendants' allegation that the parties' close relationship permits the nonsignatory Defendants to compel arbitration.

Defendants also fail to show that Plaintiffs' claims are intertwined with the Emir Contract. Plaintiffs reference the Emir Contract only because they argue that Defendants interfered with that contract. The merits of Plaintiffs' claims do not depend upon the Emir Contract; only one of Defendants' anticipated defenses brings the validity of the Emir Contract into play. See, e.g., Carvel Corp. v. Noonan, 3 N.Y.3d 189-90 (2004) (recognizing that New York law permits recovery for tortious interference, even "[w]here there has been no breach of an existing contract, but only interference with prospective

11

contract rights"). This connection is too limited for Defendants to compel Plaintiffs to arbitrate in Kazakhstan. Defendants' motion to stay the case pending arbitration is denied.

**B.   Substantive Matters**

### 1.   Tolmakov is not a necessary party to Counts I and II

Defendants argue that Counts I and II of Plaintiffs' Second Amended Complaint -- their claims for tortious interference of contract and for damages in the form of specific performance -- should be dismissed because Tolmakov is an indispensable party under Federal Rule of Civil Procedure 19. The Court concludes that Tolmakov is not a necessary party under Rule 19(a) and therefore does not consider whether his absence warrants dismissal under Rule 19(b). Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2000).

Rule 19(a) sets forth the criteria the Court must apply to determine whether Tolmakov is a necessary party. Under Rule 19(a), an absent party is a necessary party if: (1) in the person's absence, complete relief cannot be accorded among those already parties; or (2) the absent person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may, as a practical matter, impair or impede the person's ability to protect that interest; or leave any of the persons already parties subject to a substantial risk of incurring double,

12

multiple, or otherwise inconsistent obligations by reason of that claimed interest.

None of these provisions applies to Tolmakov.  Plaintiffs, can obtain complete relief in Tolmakov's absence, as Tolmakov's action do not bear upon whether Defendants tortiously interfered with the Emir Contract.  Tolmakov has claimed no interest in this matter, and Defendants have identified no interest of Tolmakov's that might be affected by the case.  Finally, because there are no ongoing proceedings in another jurisdiction, and Defendants have set forth no plausible arguments to suggest that Defendants or Tolmakov would differently affected in future proceedings, the Court believes that the risk of inconsistent obligations is insubstantial.[8]

Thus, the Court concludes that Tolmakov is not a necessary party to this lawsuit.

### 2. Counts VII, VIII, and IX Fail to State Claims

Defendants finally argue that Counts VII, VIII, and IX -- Plaintiff Sokol's claims that select Defendants breached,

---

[8] Defendants rely heavily on <u>Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.</u>, 744 F. Supp. 450 (S.D.N.Y. 1990), for their argument that the risk of inconsistent obligations makes Tolmakov necessary and indispensable.  Defendants, however, equivocate in their Reply Memorandum and state that "a decision here <u>might</u> influence an arbitrator." Defs.' Reply Mem. in Supp. of Mot. to Dismiss or Stay ¶ 24-25 (emphasis added).

interfered with, or aided and abetted a breach of fiduciary duty -- fail to state a claim. The Court agrees.

Under Delaware law, which governs because Sokol is incorporated in Delaware, Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96-97 (1991), Counts VII, VIII, and IX require Plaintiffs to allege that Defendants owed Sokol a fiduciary duty. E.g., Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (Del. Ch. 2002) ("[U]nder established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach."); Malpiede v. Townson, 780 A.2d 1075, 1096 (Del. 2001) (listing elements for aiding and abetting breach of fiduciary duty). Defendants, however, were not officially installed as directors of Sokol when they allegedly interfered with the Emir Contract. Because Defendants were not officially installed as directors, they owed no duty to Sokol. See In re Walt Disney Co. Derivative Litig., 2004 WL 2050138, *3, 2004 Del. Ch. LEXIS 132, *8 (Del. Ch. Ct. Sept. 10, 2004) (unpublished disposition); see also Omnicare, Inc., 809 A.2d at 1169. Counts VII, VIII, and IX are dismissed.[9]

---

[9] Plaintiffs argue, for the first time in their opposition papers, that Defendants acted as promoters of Sokol and therefore owed a duty to the company. Because, however, Plaintiffs have not made this allegation in their Second Amended Complaint or sought leave to amend the complaint, the Court has not considered it.

### III. Conclusion

For the above reasons, Defendants' motion to dismiss Counts VII, VIII, and IX for failure to state a claim is granted. The remainder of Defendants motion to dismiss is denied [#26]. Defendants' Cross-motion for a Stay of Discovery [#42] is dismissed as moot. The parties are instructed to comply with Magistrate Judge Debra C. Freeman's discovery schedule.

```
         SO ORDERED.
Dated:   New York, New York
         June 14, 2007
```

_____
Kimba M. Wood
United States District Judge