UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SOKOL HOLDINGS, INC., BRIAN SAVAGE,         |
and THOMAS SINCLAIR,                         |
                                            |
                    Plaintiffs,             |        05 Civ. 3749 (KMW) (DF)
                                            |
          -against-                         |        OPINION AND ORDER ON
                                            |        DEFENDANTS' MOTION
BMB MUNAI, INC., ALEXANDRE AGAIAN,          |        FOR SUMMARY JUDGMENT
BAKHYTBEK BAISEITOV, GEORGES                |
BENARROCH, BORIS CHERDABAYEV,               |
MIRGALI KUNAYEV, CREDIFINANCE,              |
CAPITAL, INC., and CREDIFINANCE             |
SECURITIES, LTD.,                           |
                                            |
                    Defendants.             |
-------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

## I.  Introduction

Plaintiffs Sokol Holding, Inc. ("Sokol"), Brian Savage, and Thomas Sinclair

("Plaintiffs") bring this action against Defendants Alexandre Agaian, Bakhytbek Baiseitov, Boris

Cherdabayev, Mirgali Kunayev, and BMB Munai, Inc. ("BMB") (collectively, the "BMB

Defendants"), as well as Georges Benarroch, Credifinance Capital, Inc., and Credifinance

Securities, Ltd. (collectively, "Credifinance Defendants").  Plaintiffs allege that Defendants

wrongfully used the contents of Plaintiffs' business plan (hereinafter, the "Sokol Business Plan")

to acquire the Aksaz-Dolinnaya-Emir oil and gas fields (hereinafter, the "ADE Oil Fields")

located in western Kazakhstan.  Plaintiffs also allege that Defendants tortiously interfered with a

contract that Plaintiffs had negotiated with a related party, Emir Oil, LLP (hereinafter, "Emir

Oil"), to purchase a controlling interest in the ADE Oil Fields, and to pursue a project to explore

and extract the field's oil reserves (hereinafter, the "ADE Project").

Defendants have moved for summary judgment as to each of Plaintiffs' claims.  For the reasons stated below, the Court GRANTS Defendants' motion in part and DENIES it in part. The Court GRANTS Defendants' motion with respect to Plaintiffs' claims of (1) Breach of Contract and (2) Breach of Fiduciary Duty.  The Court DENIES Defendants' motion with respect to Plaintiffs' claims of (1) Unfair Competition, (2) Unjust Enrichment, and (3) Tortious Interference with Contract.

## II.  Procedural Background

Plaintiffs filed their initial Complaint on April 12, 2005, and have since amended the pleadings three times.  On November 30, 2005, Defendants moved to dismiss or, in the alternative, to stay the then-operative Second Amended Complaint.  This Court denied Defendants' motion without prejudice, and stated that the motion could be renewed after completion of related discovery.  (Docket Entry ("DE") 24.)  On June 12, 2006, Defendants renewed their motion to dismiss the Second Amended Complaint or to stay the action pending arbitration.  The Court dismissed three of Plaintiffs' claims for breach of fiduciary duty (Counts VII, VIII, and IX), and denied the motion for a stay pending arbitration.  (DE 47.)  Defendants appealed the Court's denial of their motion for a stay pending arbitration.  Defendants concurrently moved in this Court for a stay pending decision by the Court of Appeals for the Second Circuit on their appeal.  This Court denied the motion.

On September 18, 2008, the Second Circuit affirmed the denial of Defendants' motion to stay the action pending arbitration with respect to all claims except Plaintiffs' claim for specific performance.  Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354 (2d Cir. 2008).  The Second Circuit held that the claim for specific performance "should be stayed or dismissed

2

pending arbitration," and that Plaintiffs should be permitted to seek leave from this Court to amend the pleadings in order to omit their claim for specific performance.  Id. at 362.

Following the Second Circuit's decision, Plaintiffs amended the pleadings and filed a Third Amended Complaint.[1]  Plaintiffs' Third Amended Complaint asserts the following five causes of action:

(1) Breach of Contract against all Defendants based on the allegation that Defendants violated a confidentiality agreement when they implemented much of the Sokol Business Plan while excluding Plaintiffs from the ADE Project;

(2) Unfair Competition against all Defendants based on the allegation that Defendants misappropriated Plaintiffs' work product with respect to the Sokol Business Plan;

(3) Unjust Enrichment against all Defendants based on the allegation that Defendants were unjustly enriched by their use of the information and efforts provided by Plaintiffs;

(4) Tortious Interference with Contract against all Defendants based on the allegation that Defendants intentionally caused a breach of the contract between Sokol and a third party, Emir Oil; and

(5) Breach of Fiduciary Duty against Credifinance Defendants based on the allegation that Credifinance Defendants breached a fiduciary duty to Sokol when they agreed to provide investment banking services to BMB Defendants.

Defendants now move for summary judgment as to each of these claims.

## III. Facts

Unless otherwise noted, the following facts are undisputed, and are derived from the parties' Local Rule 56.1 Statements, affidavits, and other submissions.

---

[1] On August 17, 2009, the magistrate judge granted Plaintiffs' motion for leave to file the Third Amended Complaint insofar as Plaintiffs sought: (1) to abandon their specific performance claim; (2) to revise Counts I (tortious interference), III (unjust enrichment), and IV (breach of fiduciary duty); and (3) to modify certain factual allegations.  Plaintiffs' motion for leave to amend was denied insofar as it sought to recast previously dismissed claims (proposed Counts VI, VII, and VIII) and to add claims of fraud (Count IX) and promissory estoppel (Count X).  The magistrate judge found that Plaintiffs failed: (1) to meet the Court-imposed deadline for seeking amendments; (2) to show reasonable diligence in pursuing such amendments; and (3) to establish "good cause" for modification of the Court's scheduling order.  (DE 104.)  This Court affirmed the magistrate judge's decision.  (DE 108.)

### A. The Parties

#### 1. Plaintiffs

Savage and Sinclair are the sole shareholders of Sokol.  In 2003, the two men drafted a

plan for a business venture (presented as the Sokol Business Plan), pursuant to which Plaintiffs

would (1) create an oil and gas exploration and production company in the Republic of

Kazakhstan, (2) acquire a controlling interest of the ADE Oil Fields, and (3) pursue the ADE

Project.

#### 2. Defendants

BMB is a Nevada Corporation that has its principal place of business in Kazakhstan.

BMB was founded by BMB Defendants Alexandre Agaian, Bakhytbek Baiseitov, Boris

Cherdabayev, and Mirgali Kunayev.  Credifinance Capital, Inc. and Credifinance Securities, Ltd.

are Canadian corporations.[2]  Georges Benarroch is an officer and director of the two

Credifinance corporations.

### B. The ADE Oil Fields and Early Acquisition Efforts

In April 1999, the Republic of Kazakhstan licensed Emir Oil to explore the ADE Oil

Fields in western Kazakhstan.[3]  The award of the exploration license to Emir Oil was publicly

announced and was widely known in the region.  Because Emir Oil lacked the necessary capital

to explore and develop the ADE Oil Fields on its own, it obtained the assistance of Petroleum

Geo-Services ("PGS"), an international geophysical company, to assess the ADE Oil Fields'

reserves, to prepare presentation materials on the ADE Project, and to secure investors.

Emir Oil met with numerous potential investors about the ADE Project.  In early 2001,

Emir Oil began to discuss the ADE Project with Falcon Energy Group ("Falcon"), a Canada-

---

[2] Credifinance Capital, Inc. is the holding company for its wholly owned subsidiary, Credifinance
Securities, Ltd.
[3] Toleush Tolmakov, a citizen of Kazakhstan, was the primary shareholder and principal of Emir Oil.

based oil company at which Plaintiff Sinclair was the Financial Director.  In light of Falcon's

discussions with Emir Oil, Falcon sought to acquire a majority interest in the ADE Oil Fields and

to pursue the ADE Project.  Falcon drafted a written plan to achieve these commercial objectives

(hereinafter, the "Falcon Business Plan").[4]  Falcon also retained Credifinance Defendants to help

it to obtain the financing for the acquisition and the ADE Project.  Credifinance Defendants

reviewed the Falcon Business Plan.  Credifinance Defendants proposed, as a capitalization

strategy, that Falcon complete a reverse merger of Falcon through InterUnion Financial

Corporation ("IUFN"), a company owned and controlled by Credifinance Defendants.[5]

In October 2002, Falcon's efforts to acquire the ADE Oil Fields failed due to lack of

funding.  PGS and Emir Oil then contacted several other potential investors in Kazakhstan about

the ADE Project.[6]

**C.  Plaintiffs' Formation of Sokol and the Sokol Business Plan**

1.  Presentation of Sokol Business Plan to BMB Defendants

Sinclair left Falcon in early 2002, and sought to acquire the ADE Oil Fields and pursue

the ADE Project independent of Falcon.  He and three partners (Savage, Nikolai Klinchev, and

Richard Moore) promoted the ADE Project to other potential investors in Kazakhstan.  Sinclair

and Savage appear to have led this effort to find investors and partners for the ADE Project.

They used the presentation materials that had been prepared by PGS and the contents of the

Falcon Business Plan, which Sinclair had apparently kept with him after leaving Falcon.

---

[4] Sinclair contributed to the development of the Falcon Business Plan and related matters.  Savage, who had professional experience with other Kazakh mining projects, assisted Sinclair in these efforts.
[5] Falcon's plan to acquire the ADE Oil Fields, including the proposed reverser merger involving Credifinance Defendants, was publicized in the region.  For example, on August 9, 2002, an IUFN press release publicized Falcon's proposed acquisition of the ADE Oil Fields, including the plan to execute the reverse merger through IUFN.
[6] During this time, BMB Defendant Kunayev was among the potential investors who discussed the ADE Project with PGS and Emir Oil.

Sinclair and Savage's pursuit of investors and partners for the ADE Project led them to discussions with BMB Defendants, which did not culminate in a formal agreement. The discussions proceeded as follows. In early 2003, Sinclair contacted BMB Defendants Kunayev, Cherdabayev, and Baiseitov, each of whom was a Kazakh national and a prominent figure in the Kazakh oil and gas exploration industry. Sinclair proposed a joint business venture to BMB Defendants, pursuant to which: (1) Sinclair and Savage would form Sokol; (2) Sokol would acquire a controlling interest in Emir Oil; and (3) Sokol would pursue the ADE Project. Pursuant to the proposed joint business venture, BMB Defendants would provide capital for the venture in exchange for receiving an equity interest in Sokol, and serving on Sokol's Board of Directors.[7] Although BMB Defendants expressed interest in the proposal, no formal agreement was reached.

During discussions with BMB Defendants, Plaintiffs gave BMB Defendants a draft of the Sokol Business Plan, which described the proposed venture. The Sokol Business Plan provided that: (1) Sokol would acquire 70% of Tolmakov's 90% interest in Emir Oil; (2) Sokol would oversee the exploration and exploitation of the ADE Oil Fields; (3) Cherdabayev, Kunayev, Baiseitov, Sinclair, Klinchev, and Moore would each own an equal equity interest in Sokol, and Savage would own a proportionally smaller equity interest; (4) all seven men would serve on Sokol's Board of Directors; and (5) Sinclair would be appointed as Sokol's Chief Financial Officer. Plaintiffs claim that the parties' plan was for BMB Defendants to provide the initial

---

[7] There is considerable dispute about the content of the parties' negotiations. Defendants present testimonial evidence that all prospective equity interest holders, including Sinclair and Savage, would be required to invest money in the ADE Oil Fields acquisition. (Kunayev Tr. 354-559; Cherdabayev Tr. 261-73; Baiseitov Tr. 186.) Plaintiffs present testimonial evidence that the parties agreed that Sinclair and Savage would <u>not</u> be required to invest any money in the acquisition because they had developed the financial and strategic plan for the project. (Sinclair Tr. 166-67, 272-73.)

funding to Sokol, in the amount of approximately $700,000, in order to acquire 70% of

Tolmakov's 90% interest in Emir Oil.

The Sokol Business Plan that Plaintiffs shared with BMB Defendants contained a

"Confidentiality Statement," which provided as follows:

> This business plan document contains highly confidential and
> proprietary information that belongs and is valuable to Sokol
> Holdings Inc., and its subsidiaries. Access to this information is
> limited only to those persons expressly authorized by Sokol
> Holdings Inc. This document should not be read by, or delivered
> to, any other person.

> This document may not he reproduced without the prior written
> consent of Sokol Holdings Inc. Information contained herein may
> not at any time be transmitted, reproduced, made available,
> released, or provided to any third party or made public by any
> means without the prior written consent of Sokol Holdings Inc.
> Irreparable harm may result to Sokol Holdings, Inc. and its
> affiliates, shareholders, executives and officers if the information
> contained herein or derived herefrom is disclosed to any third
> party.

Def. Ex. 1A.

2.   Plaintiffs' Discussions with Credifinance Defendants about the IUFN Reverse Merger

Contemporaneous to their discussions with BMB Defendants, Plaintiffs retained

Credifinance Defendants to help Sokol raise financing in addition to the money they planned to

obtain from BMB Defendants.  Credifinance Defendants had, as described above, previously

worked with Falcon and Sinclair on the failed Falcon Business Plan.  Sinclair told Credifinance

Defendants that Plaintiffs contemplated acquisition of the ADE Oil Fields and pursuit of the

ADE Project pursuant to terms that were similar to those in the Falcon Business Plan, including

the financing strategies.  Credifinance Defendants expressed interest in the venture.  On April 17,

2003, at Sinclair's request, Credifinance Defendants sent Sinclair a signed "Letter of Interest."

The "Letter of Interest" stated that, "subject to the proposed acquisition by [Sokol] being

successful, further due diligence . . . and [Credifinance] being retained as Sokol's investment bankers, Credifinance would consider (1) acting as Sokol's agent to complete the reverse merger of Sokol into IUFN and (2) acting as Sokol's exclusive agent for raising capital for the ADE fields project."  (Def. Ex. 1D.)

      3.  <u>Plaintiffs' Attempted Acquisition of the ADE Oil Fields</u>

Plaintiffs then completed the formation of Sokol, negotiated a contract to purchase a controlling interest in Emir Oil, and arranged the logistics for the purchase.  In March 2003, Plaintiffs incorporated Sokol.  On March 17, 2003, Sokol and Tolmakov executed a Letter of Intent, granting Sokol exclusive rights to complete due diligence and to finalize a contractual agreement pursuant to which Sokol would acquire a controlling interest in Emir Oil.  On April 26, 2003, Sokol and Tolmakov entered into an agreement that provided that Sokol would purchase 70% of Tolmakov's majority interest in Emir Oil (hereinafter, the "Emir Contract"). Pursuant to the Emir Contract, Sokol would: (1) pay Tolmakov $700,000 on April 27, 2003; (2) make an additional payment on April 29, 2003; and (3) complete a Charter and Foundation Agreement shortly thereafter.  Plaintiffs and BMB Defendants appear to have agreed to establish a bank account for the purpose of holding the money to be transferred to Tolmakov pursuant to the Emir Contract.  According to Plaintiffs, BMB Defendants controlled the account, which purportedly contained the $700,000 in investment money contributed by BMB Defendants.

On April 27, 2003, BMB Defendants did not approve the transfer of $700,000 to Tolmakov.  Because this money was not transferred to Tolmakov, the terms of the Emir Contract were not performed.  It became clear that Plaintiffs' plan for Sokol to acquire a controlling interest in Emir Oil, as well as the ADE Oil Fields, had failed.

4.  <u>BMB Defendants' Acquisition of the ADE Oil Fields and Exclusion of Plaintiffs</u>

At the same time that BMB Defendants were in discussion with Plaintiffs, they were also independently communicating – and apparently negotiating – with Tolmakov about acquisition of a controlling interest in Emir Oil and the ADE Oil Fields.  On April 26, 2003, the <u>same</u> day that Sokol and Tolmakov signed the Emir Contract, BMB Defendant Kunayev paid Tolmakov $200,000 in cash.  The purpose of this $200,000 payment is in dispute.  Plaintiffs claim that the payment was a bribe by BMB Defendants to persuade Tolmakov to repudiate his agreement with Sokol, to sell his Emir Oil interest to BMB, and to cease business dealings with Plaintiffs.  Defendants claim that the $200,000 was an initial payment in connection with a <u>separate</u> transaction, pursuant to which BMB – on behalf of BMB Defendants – would itself purchase 70% of Tolmakov's majority interest in Emir Oil and the ADE Oil Fields.

On May 7, 2003, BMB entered into an agreement with Tolmakov to purchase 70% of Tolmakov's majority interest in Emir Oil and the ADE Oil Fields.[8]  BMB Defendants did not notify Plaintiffs about this agreement, to which Plaintiffs were not a party.  This agreement occurred less than two weeks after Sokol and Tolmakov entered into the Emir Contract.  BMB's acquisition of Emir Oil and the ADE Oil Fields was finalized on June 7, 2003.  BMB then pursued the ADE Project, implementing BMB's own Business Plan, which contained some similarities to the Sokol Business Plan, including in the areas of risk assessment, financial analysis, strategic planning, and use of a reverse merger into IUFN, the entity owned by Credifinance Defendants.  BMB obtained financing assistance from Credifinance Defendants, using materials and information gained in part from previous dealings with Falcon and Plaintiffs.

---

[8] BMB, the named owner of this majority interest in Emir Oil, was incorporated on May 5, 2003.

## IV. Analysis of Plaintiffs' Claims

### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate only where the record before the court establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008). A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008); see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Fed. R. Civ. P. 56(e). Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The non-moving party may not rely on "conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998), nor may it rely on mere denials or unsupported alternative explanations of its conduct. See S.E.C. v. Grotto, No. 05-5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and must set forth "significant, probative evidence" on which a reasonable factfinder could decide in its favor. Anderson, 477 U.S. at 247-48.

**B. Breach of Contract – Sokol Business Plan's Confidentiality Agreement**

1. <u>Legal Standard</u>

Plaintiffs claim that Defendants are liable for breach of contract under New York law, because (1) Defendants entered into a confidentiality agreement with Plaintiffs, and (2) Defendants breached that agreement.[9]

New York law protects ideas that have been disclosed pursuant to a confidentiality agreement. If a party uses an idea in violation of a confidentiality agreement, it is liable under New York's "submission-of-idea" doctrine. <u>See</u> <u>Nadel v. Play-By-Play Toys & Novelties, Inc.</u>. 208 F.3d 368, 373-74 (2d Cir. 2000). However, a plaintiff must establish that the defendant received valid consideration in order for the alleged agreement to be inferred. In a submission-of-idea breach of contract claim, consideration may be inferred from the idea's "novelty." <u>Id.</u> at 376-77 (citing <u>Apfel v. Prudential-Bache Securities, Inc.</u>, 81 N.Y.2d 470, 478 (1993)). Novelty is determined through a fact-specific inquiry as to whether the idea is novel <u>to the recipient</u> of that idea. <u>Nadel</u>, 208 F.3d at 380. Where a party has simply repackaged a business idea that was not itself novel to the recipient, there can be no recovery for breach of the related confidentiality agreement. <u>See</u> <u>Alliance Sec. Prods., Inc. v. Fleming Co.</u>, 471 F. Supp. 2d 452, 459-60 & 462 (S.D.N.Y. 2007) (rejecting claim where business plan "'partake[s] more of the nature of elaboration and renovation than innovation'") (quoting <u>Victor G. Reiling Assocs. v. Fisher-Price, Inc.</u>, 450 F. Supp. 2d 175, 180 (D. Conn. 2006)); <u>Murray v. NBC</u>, 844 F.2d 988, 993 (2d Cir. 1988) (finding that where "an idea consists in essence of nothing more than a variation on a basic theme . . . novelty cannot be found to exist").

---

[9] The parties' briefs largely assume that New York law controls in this litigation. The parties' "implied consent" to application of New York law is "sufficient to establish choice of law." <u>Motorola Credit Corp. v. Uzan</u>, 388 F.3d 39, 61 (2d Cir. 2004) (citing <u>Krumme v. WestPoint Stevens, Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000)). Accordingly, the Court applies New York law to all claims.

2.  <u>Application of Legal Standard to Facts</u>

Plaintiffs' breach of contract claim is based on Defendants' alleged violation of the confidentiality agreement in the Sokol Business Plan.  Plaintiffs argue that, pursuant to the agreement, the parties were to provide the following consideration: (1) Plaintiffs would permit Defendants to view the contents of the Sokol Business Plan and to participate in the execution of that plan; and (2) Defendants would not use or disclose the contents of the Sokol Business Plan without Plaintiffs' consent.[10]  Plaintiffs argue that, by executing the Sokol Business Plan to acquire the ADE Oil Fields and pursue the ADE Project through BMB, while excluding Plaintiffs, Defendants breached the terms of the confidentiality agreement.[11]

Based on the record before the Court, Defendants cannot be liable for breaching the confidentiality agreement because no ideas in the Sokol Business Plan were novel to Defendants. The Court finds that the plan's content reflected strategies that are commonly used by Kazakh oil and gas exploration businesses.  The Court also finds that <u>Defendants</u> were well aware of all substantive components of the Sokol Business Plan prior to Plaintiffs' presentation of the plan to Defendants in early 2003.  Because Defendants did not receive valid consideration pursuant to the confidentiality agreement, Plaintiffs cannot recover for breach of the confidentiality agreement.

---

[10] It is undisputed that no written agreement with respect to confidentiality was ever signed by the parties.

[11] In their opposition to Defendants' motion for summary judgment, Plaintiffs alternatively attempt to reframe their breach of contract claim by relying on an alleged "joint venture agreement."  Plaintiffs argue that their efforts, or "sweat equity," constitute valid consideration.  (Pl. Br. 15-17.)  This argument must be rejected.  Plaintiffs' <u>Third</u> Amended Complaint explicitly alleges breach of the confidentiality agreement in the Sokol Business Plan, <u>not</u> of any subsequent joint venture agreement.  In any event, there is no evidence in the record to establish that the parties executed a binding joint venture agreement to implement the Sokol Business Plan.  Therefore, the Court finds that an amendment to Plaintiffs' pleadings alleging that Defendants breached a joint venture agreement would be futile.  <u>See Dluhos v. Floating and Abandoned Vessel Known as "New York,"</u> 162 F.3d 63, 69 (2d Cir. 1998) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

Plaintiffs argue that specific aspects of the Sokol Business Plan were novel and thus of value to Defendants, including: (1) the creation of a financing structure for the ADE Project by utilizing a publicly-traded Western shell corporation (IUFN) for a reverse merger; and (2) the placement of experienced Kazakh businessmen in the majority of senior managerial positions. As discussed below, the Court finds that these ideas lack the element of novelty required to prove Plaintiffs' breach of contract claim.

First, Defendants were familiar with the established business strategy of engaging a Western company to execute a reverse merger to finance Kazakh oil exploration projects.  BMB Defendant Cherdabayev, for example, was a shareholder of Chaparral Resources, Inc., an American company that pursued a reverse merger plan in May 2002 in order to finance a Kazakh oil exploration project.  (Def. Ex. 1I.)  The parties were well aware of Chaparral's success with this project.  (Sinclair Tr. 122-24.)  Meanwhile, well before Plaintiffs drafted the Sokol Business Plan, Credifinance Defendants had obtained the 2002 Falcon Business Plan through their own business dealings with Falcon.  (Benarroch Decl. ¶ 4.)  The Falcon Business Plan contained nearly the identical financing strategy as that outlined in the Sokol Business Plan.  (Def. Ex. 11A.)  The August 2002 IUFN Press Release on Falcon's prospective acquisition of the ADE Oil Fields, which discussed Credifinance Defendants' financing strategy in detail, provided the public – and BMB Defendants – additional information on the utility of a reverse merger for Kazakh oil exploration projects.  (Def. Ex. 1K.)  This evidence demonstrates that Plaintiffs' reverse merger idea was not "novel," but instead a business idea already generally known within Kazakhstan's oil industry, and specifically known by Defendants.  See Alliance Sec. Prods., 471 F. Supp. 2d at 462; Murray, 844 F.2d at 993.

Second, there was nothing novel about Plaintiffs' business plan to include Kazakhs as directors and officeholders in a Kazakh oil exploration project.  Defendants identify numerous local and Western oil development companies that have pursued oil exploration projects in Kazakhstan; these companies very often have Kazakh businesspeople in top management positions and on the corporate Board of Directors.  (SOF ¶¶ 153-80.)  BMB Defendant Kunayev, as vice president of a Kazakh oil and gas company himself, was aware of these other companies and the individuals leading them.  (Kunayev Tr. 172.)   Plaintiffs' contention that it was novel to appoint Kazakh businessmen to corporate leadership positions is undermined by the facts in the record.

Likewise, the Court finds no merit to Plaintiffs' argument that the Sokol Business Plan was novel insofar as it was the first to propose having a <u>majority</u> of Kazakhs serve as directors and managers for an oil exploration company.  Even if this factual contention were true, which the record suggests it is not, such an idea cannot be considered novel.  It is, at most, a "variation on a basic theme" – that is, the inclusion of Kazakh businesspeople in Kazakh oil projects.  A finding of novelty with respect to this business idea is not warranted.  <u>See</u> <u>Murray</u>, 844 F.2d at 993; <u>see also</u> <u>Brandwynne v. Combe International, Inc.</u>, 74 F. Supp. 2d 364, 376 (S.D.N.Y. 1999) (finding that, even where plaintiffs provided a "compilation of elements never before offered to the public, plaintiffs' idea nevertheless lacks novelty because a combination of pre-existing elements is not considered novel").

The Court finds Plaintiffs' breach of contract claim with respect to the Sokol Business Plan's confidentiality agreement to be without merit.  Accordingly, the Court GRANTS Defendants' motion for summary judgment as to this claim.

### C. Unfair Competition – Misappropriation of Product of Labors and Expenditures

   1. <u>Legal Standard</u>

The tort of unfair competition under New York law is premised on the principle that one may not misappropriate the product of the labor, skill, and expenditures of another.  <u>See</u> <u>Saratoga Vichy Spring Co., Inc. v. Lehman,</u> 625 F.2d 1037, 1044 (2d Cir. 1980); <u>ESPN, Inc. v. Quiksilver, Inc.</u>, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).  Such a claim requires a showing of bad faith.  <u>Saratoga Vichy Spring</u>, 625 F.2d at 1044.

A claim of unfair competition does not necessarily require a showing of misappropriation of a trade secret or commercially novel idea that is produced by one party.  <u>See</u> <u>Telecom Int'l Am., Ltd. v. AT&T Corp.</u>, 280 F.3d 175, 197-98 (2d Cir. 2001) (noting that New York's law of unfair competition depends heavily on the facts of a case, and may encompass commercial immorality, taking the skill, expenditures and labors of a competitor, and misappropriating a benefit or property right for commercial advantage).[12]  The doctrine of unfair competition may apply in cases involving the misappropriation of a party's business-related <u>labors</u> and <u>expenditures</u> themselves – that is, the misappropriation of a party's work product.  <u>See, e.g.</u>, <u>Milton Abeles, Inc. v. Farmers Pride, Inc.</u>, 603 F. Supp. 2d 500, 503 (noting that misappropriation of information that is the product of "significant labor, skill, and money . . . may give rise to a claim of unfair competition"); <u>Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 209

---

[12] It is well established that the concept of unfair competition may encompass a broad range of misconduct.  <u>Roy Export Co. Establishment of Vaduz, Lichtenstein v. Columbia Broad. Sys., Inc.</u>, 672 F.2d 1095, 1105 (2d Cir. 1982) ("New York courts have noted the 'incalculable variety' of illegal practices falling within the unfair competition rubric … calling it a 'broad and flexible' doctrine"); <u>Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co.</u>, 159 N.Y.S.2d 606, 609-10 (App. Div. 1st Dep't 1957) ("Unfair competition is a form of unlawful business injury. . . . The incalculable variety of illegal commercial practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use."); <u>Flexitized, Inc. v. National Flexitized Corp.</u>, 214 F. Supp. 664, 675 (S.D.N.Y. 1963) ("The law of unfair competition . . . must be applied flexibly, and whether relief should be granted in a given instance must be determined by an appraisal of the particular circumstances of the case."), <u>rev'd on other grounds</u>, 335 F.2d 774 (2d Cir. 1964).

(S.D.N.Y. 2008) (explaining that a claim of unfair competition may be based on the misappropriation of business strategies, internal company documents, and client lists); sit-up Ltd. v. IAC/Interactive Corp., No. 05-9292, 2008 U.S. Dist. LEXIS 12017, at *61-66 (S.D.N.Y. Feb. 20, 2008) (dismissing misappropriation of idea claim on the ground that the idea was not novel but denying motion to dismiss claim for misappropriation of labors and expenditures with respect to defendants' alleged misuse of business materials generated by plaintiffs).

> 2.   Application of Legal Standard to Facts

The Court finds that summary judgment is not warranted as to Plaintiff's unfair competition claim.  There is a genuine issue of material fact as to whether Defendants misappropriated Plaintiffs' work product generated in connection with the acquisition of the ADE Oil Fields and pursuit of the ADE Project.

Defendants argue that the lack of novelty in the Sokol Business Plan is fatal to Plaintiffs' misappropriation claim.  As discussed above, New York law permits recovery on a claim of unfair competition where a defendant has misappropriated the product of a plaintiff's investment of labor, skill, and expenditures with respect to a business plan, system, or venture, even absent a showing of "novelty."  See, e.g., Linkco, Inc. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 501-02 (S.D.N.Y. 2002) (collecting cases in which courts have permitted unfair competition claims to proceed where evidence exists that a party misappropriated the product of another's efforts, even where allegedly misappropriated information did not constitute a "trade secret" or "novel idea").

The Court finds that there is sufficient evidence for a jury to conclude that Plaintiffs devoted significant labor, skill, and effort in preparing for the acquisition of the ADE Oil Fields and implementation of the ADE Project, including, but not limited to, work product that consisted of the exercise of due diligence, negotiation of the necessary financial transactions, and

development of specific capitalization structures.  (<u>See, e.g.</u>, Def. Ex. 1A (Sokol Business Plan); Pl. Ex. 15 (emails documenting Plaintiff's due diligence and planning).)  A reasonable jury could find that Defendants, acting in bad faith, misappropriated Plaintiffs' work product (as opposed to the mere "ideas" contained in the Sokol Business Plan) when they (1) entered into a contract to acquire the ADE Oil Fields, (2) completed BMB's reverse merger through IUFN, and (3) took other steps related to the ADE Project that Plaintiffs' efforts prepared.  (<u>See, e.g.</u>, Pl. Ex. 16, Agaian Tr. 197-99 (stating that he or other Defendants could have "cut and pasted" the contents of the Sokol Business Plan into BMB's subsequent planning documents); Pl Ex. 31 (email from Agaian to Sinclair noting the usefulness of the information and efforts provided by Plaintiffs on Credifinance); Pl. Ex. 38 (BMB/IUFN Presentation document dated after Defendants' acquisition of ADE Oil Fields discussing reports provided by Sinclair).)  A reasonable jury could also find that Defendants benefitted from their use of Plaintiff's work product in pursuing the BMB business venture.  The tort of misappropriation of skill, expenditures and labors is sufficiently "adaptable and capacious" to permit recovery in such a case.  <u>See</u> <u>Roy Export Co.</u>, 672 F.2d at 1105; <u>sit-up Ltd.</u>, 2008 U.S. Dist. LEXIS 12017, at *61.

There is a genuine issue of fact as to whether Defendants are liable for misappropriation of the product of Plaintiffs' labors, skills, and expenditures.  Accordingly, the Court DENIES the motion for summary judgment as to Plaintiffs' unfair competition claim.

### D.  Unjust Enrichment

#### 1.  <u>Legal Standard</u>

To establish a claim for unjust enrichment under New York law, a plaintiff must show that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution.

CBS Broadcasting, Inc. v. Jones, 460 F. Supp. 2d 500, 505 (S.D.N.Y. 2006); Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998).  The essence of a claim for unjust enrichment is that one party has parted with something of value that has been received by another at the first party's expense.  See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

Unjust enrichment is an equitable remedy applicable where there is no remedy available at law to compensate a party who has "unwittingly conferred a benefit" on another.  See AmBase Corp. v. City Investing Co. Liquidating Trust, No. 01-10761, 2002 U.S. Dist. LEXIS 15198, at *4 (S.D.N.Y. Aug. 15, 2002); see also Goldman v. Metropolitan Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.") (citations omitted).

      2.   Application of Legal Standard to Facts

The Court finds that summary judgment is not warranted as to Plaintiffs' unjust enrichment claim.  There is a genuine issue of material fact as to whether Defendants were unjustly enriched by Plaintiffs' efforts with respect to the ADE Oil Fields acquisition and the ADE Project.

Plaintiffs set forth their unjust enrichment claim based upon the purported benefit Defendants received through their use of (1) the information contained in the Sokol Business Plan, and (2) the related efforts invested by Plaintiffs.  With respect to Defendants' use of the contents of the Sokol Business Plan, Plaintiffs' claim fails.  Where an unjust enrichment claim is premised on a plaintiff's submission of an idea to a defendant, the plaintiff must demonstrate the novelty of the idea in order to recover.  See Khreativity Unlimited v. Mattel, Inc., 101 F. Supp. 2d 177, 186-87 (S.D.N.Y. 2000); Gidatex, S.r.L. v. Campaniello Imports, Ltd., 49 F. Supp. 2d 298, 303 (S.D.N.Y. 1999).  The Court has already found that the ideas contained in the Sokol

Business Plan were not novel to Defendants.  See Part IV.B, supra.  Thus, Defendants were not

unjustly enriched by Plaintiffs' provision and Defendants' use of the contents of the Sokol

Business Plan to Defendants.

With respect to the work product that Plaintiffs generated in seeking to acquire the ADE

Oil Fields and to pursue the ADE Project, including the exercise of due diligence, negotiation of

financial transactions, and development of specific capitalization structures, there is sufficient

evidence for a jury to find that: (1) Defendants were unjustly enriched by their use of Plaintiffs'

work product, (2) Defendants' enrichment came at Plaintiffs' expense; and (3) equity and good

conscience require that Defendants compensate Plaintiffs for the product of their efforts and

expenditures.  There is thus a genuine issue of fact whether the circumstances warrant recovery

for unjust enrichment.

Accordingly, the Court DENIES Defendants' motion for summary judgment as to

Plaintiffs' claim of unjust enrichment.

### E. Tortious Interference with Contract – Emir Contract

1. Legal Standard

Under New York law, the elements of a claim for tortious interference with contract are:

> (1) the existence of a valid contract between the plaintiff and a
> third party; (2) the defendant's knowledge of the contract; (3) the
> defendant's intentional procurement of the third-party's breach of
> the contract without justification; (4) actual breach of the contract;
> and (5) damages resulting therefrom.

Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006) (quoting Lama Holding Co.

v. Smith Barney Inc., 668 N.E.2d 1370, 1375 (N.Y. 1996) (internal quotation marks omitted).

In contrast to a claim of tortious interference with prospective business relations, a

plaintiff need not show actual malice to prove a claim of tortious interference with an existing

contract.  See Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC, No. 07-7998, 2008
U.S. Dist. LEXIS 28999, at *11-12 (S.D.N.Y. Apr. 10, 2008); Carvel Corp. v. Noonan, 818
N.E.2d 1100, 1103 (N.Y. 2004); NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 664
N.E.2d 492, 496 (N.Y. 1996).

       2.  Application of Legal Standard to Facts

      The Court finds that summary judgment is not warranted as to Plaintiff's claim for
tortious interference with contract.  There is sufficient evidence for a reasonable factfinder to
conclude that one or more Defendants tortiously interfered with the Emir Contract between
Plaintiffs and Tolmakov.

      First, the record supports a finding that Sokol and Tolmakov executed the Emir Contract,
and that Defendants had knowledge of that agreement. The testimony of Defendants makes
apparent that they were aware of the Emir Contract, which was signed by Tolmakov and Sinclair
at BMB Defendant Kunayev's office, in Kunayev's presence.  (Kunayev Tr. 407-12; Agaian Tr.
142-45.)

      Next, a reasonable factfinder could conclude that BMB Defendants intended to procure,
and in fact did procure, Tolmakov's breach of the Emir Contract.  Defendants argue that, because
Sokol failed to deliver the $700,000 payment on April 27, 2003, as required by the Emir
Contract, Plaintiffs' failure to perform prevents a finding that Tolmakov breached the Emir
Contract and thus that BMB Defendants caused such a breach.  Plaintiffs argue that BMB
Defendants' payment of $200,000 in cash, on April 26, 2003 (Pl. Ex. 14), constituted a bribe
meant to ensure that Tolmakov would not sell his ownership interest in the ADE Oil Fields to
Sokol under any circumstances.  The record contains sufficient support for Plaintiffs' version of
the facts.  The timing and context of BMB Defendants' payment to Tolmakov suggests an intent

to frustrate performance under the Emir Contract.  There is also support for the contention that

BMB Defendants procured Tolmakov's breach of the Emir Contract with the intent of executing

their <u>own</u> contract with Tolmakov to purchase a controlling interest in the ADE Oil Fields.  Less

than two weeks after the Emir Contract failed, BMB Defendants and Tolmakov in fact entered

into an agreement that was nearly identical to the failed Emir Contract.  (Def. Ex. 1H.)  Plaintiffs

were excluded from this agreement.[13]

There exists a material issue of fact whether Defendants' intentional conduct caused

Tolmakov to abandon the Emir Contract and, if so, whether Plaintiffs suffered damages as a

result of such conduct.  Accordingly, the Court DENIES Defendants' motion for summary

judgment with respect to Plaintiffs' claim of tortious interference with contract.

### F.  Breach of Fiduciary Duty by Credifinance Defendants

#### 1.  <u>Legal Standard</u>

To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence

of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary

duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct.  <u>See</u>

<u>Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (citing <u>Kurtzman v. Bergstol</u>,

40 A.D.3d 588, 590 (App. Div. 2d Dep't 2007)); <u>Thermal Imaging, Inc. v. Sandgrain Sec., Inc.</u>,

158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001).

To determine whether a party in a business relationship with another party has a fiduciary

duty to that second party depends on the "nature and quality of that relationship."  <u>Kidz Cloz,</u>

<u>Inc. V. Officially for Kids, Inc.</u>, No. 00-6270, 2001 U.S. Dist. LEXIS 1135, at *11-12 (S.D.N.Y.

---

[13] Plaintiffs also offer evidence that Defendants' conduct prevented Plaintiffs from transferring the $700,000 payment to Tolmakov pursuant to the Emir Contract.  Under New York law as to a claim of tortious interference with contract, it is not sufficient that Defendants' conduct prevented <u>Plaintiffs'</u> performance under the Emir Contract.  Plaintiffs must instead prove that Defendants intentionally procured the breach of a <u>third party</u> – to wit, Tolmakov.

Feb. 8, 2001).  A fiduciary relationship exists "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991) (citation and quotation marks omitted).  Although New York courts do not adhere to "rigid formulas" in determining whether a fiduciary duty exists, the analysis "typically focus[es] on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first."  Ciccone v. Hersh, 530 F. Supp. 2d 574, 577 (S.D.N.Y. 2008) (quoting Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, 767 F. Supp. 1220, 1231 (S.D.N.Y. 1991)).  Even where a party reposes trust or confidence in another, however, a fiduciary duty does not rise unless that trust is also accepted by the other party.  See Thermal Imaging, Inc., 158 F. Supp. 2d at 343.

        2.  Application of Legal Standard to Facts

      The Court finds that Plaintiffs' claim for breach of fiduciary duty against Credifinance Defendants is without evidentiary support.  Plaintiffs contend that Credifinance Defendants owed Sokol a fiduciary duty based on their discussions about Credifinance Defendants providing "investment banking and other services to Sokol to facilitate" the Sokol Business Plan.  (Third Am. Compl. ¶ 82.)  Plaintiffs allege that Credifinance Defendants breached this fiduciary duty when they instead provided these same services to BMB Defendants.  (Id. ¶ 83.)  There is, however, no evidence that Plaintiffs "reposed trust or confidence" in Credifinance Defendants, see Ciccone, 530 F. Supp. 2d at 577, or that Credifinance Defendants accepted that trust, whether by words or conduct.  See Thermal Imaging, Inc., 158 F. Supp. 2d at 343.

      Credifinance Defendants' involvement with financial strategy and planning for the ADE Project began well before Plaintiffs approached them about the Sokol Business Plan in early 2003.  By 2002, Credifinance Defendants had developed the IUFN reverse merger plan to assist

Falcon with its proposed ADE Oil Fields acquisition.  (Bennaroch Tr. 45-46; Bennaroch Decl. ¶¶ 2-6.)  In Plaintiffs' communications with Credifinance Defendants in 2003, the parties did not enter into a contractual agreement, or any other business arrangement, that would create a fiduciary relationship.  Credifinance's "Letter of Interest" to Sinclair, dated April 17, 2003, did not constitute anything beyond preliminary business discussions, stating that, subject to several preconditions, "Credifinance would consider" acting as Sokol's agent to complete the reverse merger through IUFN.  (Def. Ex. 1D (emphasis added).)  Sokol never entered into a written agreement with Credifinance Defendants to retain them as Sokol's investment banker.  (Savage Tr. 122-24; Benarroch Tr. 79, 160.)  Given the circumstances of the parties' relationship, Credifinance Defendants had no fiduciary duty to provide their investment banking services exclusively to Plaintiffs.  Credifinance Defendants were free to discuss and pursue business opportunities related to the ADE Project with other parties, including BMB Defendants.

The Court finds that Credifinance Defendants did not have a fiduciary duty to Plaintiffs.  Accordingly, the Court GRANTS Defendants' motion for summary judgment as to the claim for breach of fiduciary duty.

### V. Conclusion and Pre-Trial Schedule

The Court GRANTS Defendants' motion for summary judgment with respect to Plaintiffs' claims of Breach of Contract (Count II) and Breach of Fiduciary Duty (Count IV). The Court DENIES the motion with respect to Plaintiffs' claims of Unfair Competition (Count V), Unjust Enrichment (Count III), and Tortious Interference with Contract (Count I).

No later than July 20, 2010, the parties shall submit a joint pre-trial order that conforms to the Court's Individual Practices.  The pre-trial order shall contain a one-page joint statement of the nature of the case to be read to prospective jurors by the Court at voir dire.

Any motions in limine shall be submitted no later than July 20, 2010. The parties shall submit responses to any motions in limine no later than July 27, 2010. The parties shall submit any replies no later than August 3, 2010.

This case is set for a pre-trial conference on August 16, 2010, at 2:00 p.m.

This case is deemed Ready Trial as of August 17, 2010. At any time after the Ready Trial Date, the Court may call the parties to trial upon forty-eight hours notice. No adjournment of that trial date will be permitted, unless counsel has faxed to chambers an affidavit stating that he or she is engaged in trial in another court. This affidavit shall include: (1) the caption of the other case, including its index number; (2) the expected length of the trial; (3) the court in which the other case is to be tried; and (4) the name and telephone number of the judge presiding over the case. Counsel shall notify the Court and all other counsel in writing, at the earliest possible time, of any particular scheduling problems involving out-of-town witnesses or other exigencies.

SO ORDERED.

Dated: New York, New York
     June 29 , 2010

                              Kimba M. Wood
                        United States District Judge